IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANET LYNN DENGLER,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   21-cv-1289** |
| | : | |
| **KILOLO KIJAKAZI,[1]** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **December 20, 2022**

Plaintiff Janet Lynn Dengler brought this action seeking review of the Acting

Commissioner of Social Security Administration's decision denying her claim for Social

Security Disability Insurance (SSDI) under Title II of the Social Security Act, 42 U.S.C. §§ 401–

433.  This matter is before me for disposition upon consent of the parties.  For the reasons set

forth below, Plaintiff's Request for Review (ECF No. 11) is **DENIED**.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed for SSDI, alleging disability since January 11, 2019, due to

multiple sclerosis, psoriatic arthritis, ankylosing spondylosis, diabetes, urinary incontinence,

occipital neuralgia, olecranon bursitis, palpitations, premature atrial contraction and vitamin D

deficiency.  (R. 216).  Plaintiff's applications were denied at the initial level and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).

(R. 86, 100, 104-07, 109-12).  Plaintiff, represented by counsel, and a vocational expert (VE)

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been
substituted for Andrew Saul as the Defendant in this case.

testified at the July 10, 2020, administrative hearing.  (R. 31-74).  On August 20, 2020, the ALJ

issued a decision unfavorable to Plaintiff.  (R. 9-30).  Plaintiff appealed the ALJ's decision, and

the Appeals Council denied Plaintiff's request for review on January 19, 2021, thus making the

ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On March 17, 2021, Plaintiff filed a complaint in the United States District Court for the

Eastern District of Pennsylvania.  (Compl., ECF No. 1).  On April 12, 2021, Plaintiff consented

to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Consent Order, ECF No. 5).  On September

24, 2021, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s

Br., ECF No. 11).  On November 15, 2021, the Commissioner filed a Response.  (Resp., ECF

No. 14).


## II.     FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here

the evidence relevant to the instant request for review.

Plaintiff was born on June 11, 1973, and was 45 years old on the alleged disability onset

date.  (R. 212).  She graduated from high school.  (R. 217).  Plaintiff previously worked as a loss

prevention and safety manager.  (R. 218).

### A.     Medical Evidence[2]

Plaintiff treated with neurologist Joan Sweeney, M.D., of St. Luke's Neurology

Associates in Allentown, Pennsylvania, throughout the relevant period.  The records from these

visits include diagnoses for, *inter alia*, multiple sclerosis and fatigue.  (*See, e.g.,* R. 583).  Notes

indicate that Plaintiff was diagnosed with multiple sclerosis in 2013 but likely had symptoms for

---

[2]  Plaintiff's Request for Review focuses on the ALJ's findings regarding her multiple sclerosis and fatigue.  Accordingly, the Court does not recite the evidence regarding her other conditions, except where otherwise relevant to her challenge to the ALJ's decision.

20 years prior to that.  (R. 584).  Plaintiff presented to Dr. Sweeney with increased fatigue on

January 19, 2018, and was referred to sleep medicine.  (*Id.*).  It was noted that Plaintiff had not

fallen or tripped.  (*Id.*).  However, she was noted to have a wide-based gait.  (R. 587).  On

January 11, 2019, Plaintiff had "minor fall to the ground" in the middle of the night while

attempting to feel her way to the bathroom in the dark, although Plaintiff was "normally able to

see" with the lights off.  (R. 332).  She reported losing vision for 30 seconds, causing her to fall.

(R. 364).  Plaintiff went to Grand View Hospital in Sellersville, Pennsylvania, later that day after

she experienced numbness and loss of sensation on the right side of her face and in her right arm.

(*Id.*).  It was noted that Plaintiff had been off her multiple sclerosis medications during the prior

four months due to a possible liver reaction to them.  (*Id.*).  She spent four days in the hospital

with a diagnosis of "exacerbation of MS [multiple sclerosis]."  (R. 334).

        Plaintiff fell again at some point prior to her August 16, 2019 visit with Dr. Sweeney.  (R.

666-68).  On December 13, 2019, it was noted that Plaintiff had fallen approximately three times

throughout the year.  (R. 820).  On March 13, 2020, Plaintiff reported a fourth fall while getting

out of the car.  (R. 829).  At this visit, it was further noted that she had a wide gait and used a

cane for distance and endurance.  (R. 830).  Throughout her visits with Dr. Sweeney, Plaintiff

was repeatedly observed to be awake, alert, oriented to person, place and time, with normal

attention, concentration, and memory.  (R. 606, 621, 625, 631, 668, 822, 829, 845).

        The record also contains a "limitations statement"[3] from Dr. Sweeney dated May 22,

2017.  (R. 280-84).  In the statement, Dr. Sweeney indicated that Plaintiff's multiple sclerosis

limited her ability to lift, stand, walk, sit and work.  (R. 281).  She opined that Plaintiff could not

lift more than five pounds or work past 7 p.m. or more than four eight-hour shifts per week.  (R.

---

        [3] This statement was apparently prepared in conjunction with a prior denied application
for disability benefits.

282).  She further noted that Plaintiff could engage only in "limited" walking and required "frequent" or "regular" breaks.  (*Id.*).

Plaintiff also treated with cardiologist Michael Durkin, M.D., during the period at issue. Relevant to the instant matter, she was noted to suffer from fatigue, however, she further presented as alert and fully oriented.  (R. 375-77, 379-80, 419).  Dr. Durkin's May 17, 2019 notes state: "I also feel [Plaintiff] has features of obstructive sleep apnea.  Her Neurologist has ordered a sleep study which I agree with.  She has yet to get this done."  (R. 420).

On June 24, 2019, State agency medical consultant Lawrence Schaffzin, M.D., opined that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, and stand and/or walk or sit for six hours in an eight-hour workday.  (R. 82).  He further noted that Plaintiff could frequently balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, ropes and scaffolds, with no manipulative, visual or communicative limitations and no limitations for extreme heat and cold, wetness and humidity, noise, hazards, and fumes, odors, dusts, gases and poor ventilation.  (R. 83).  However, he found that Plaintiff should avoid concentrated exposure to vibrations.  (*Id.*).  On July 9, 2019, State agency psychological consultant Frank M. Mrykalo, Ed.D., opined that Plaintiff had mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting and managing herself.  (R. 80).

On reconsideration after the denial of Plaintiff's application, State agency medical consultant Toni Jo Parmelee, opined that Plaintiff could frequently lift and/or carry up to 10 pounds, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  (R. 94).  She further noted that Plaintiff could frequently stoop, kneel, crouch and climb ramps and stairs; occasionally balance and crawl; and never climb ladders, ropes, and scaffolds.  (R. 95).  She found that Plaintiff had no manipulative, visual or

communicative limitations and no limitations for wetness and noise.  (R. 95).  However, she

found that Plaintiff should avoid even moderate exposure to extreme cold and heat and

concentrated exposure to humidity, vibration, hazards, and fumes, odors, dusts, gases and poor

ventilation.  (R. 95-96).  On November 1, 2019, State agency psychological consultant Paul

Taren, Ph.D., opined that Plaintiff had mild limitations in concentrating, persisting or

maintaining pace and adapting and managing herself, but no limitations in understanding,

remembering or applying information or interacting with others.  (R. 92-93).

      **B.**      **Non-Medical Evidence**

      The record also contains non-medical evidence.  In an Adult Function Report dated May

7, 2019, Plaintiff reported constant pain throughout her body affecting her concentration and

difficulty getting up in the morning due to extreme fatigue and balance issues.  (R. 227).  She

described her normal activities as watching television, spending time with her family, assisting

with pet care, preparing simple meals, helping with laundry, driving (although usually with

others in the vehicle), shopping with her husband, managing finances, occasional craft making,

getting her nails done biweekly, and socializing with neighbors and friends at times.  (R. 227-

31).  She stated that she usually curtails evening socialization because of her medications.  (R.

231).  She checked boxes indicating problems with lifting, squatting, standing, bending,

reaching, walking, sitting, kneeling, talking, hearing, stair climbing, remembering, completing

tasks, concentrating, following instructions and understanding.  (R. 232).  She indicated she

could walk one block before needing to rest and that she sometimes uses a cane because her

neurologist recommended it after she fell a few times.  (*Id.*).  Plaintiff takes, among other

medications, valium, gabapentin, and Klonopin (clonazepam).  (R. 234).  She reported that these

three drugs all cause drowsiness and balance problems.  (*Id.*).

      At the July 10, 2020 administrative hearing, Plaintiff reported working as a loss

prevention manager at Lowe's until her position was eliminated and she was unable to apply for another opening because it required her to work evenings when her medication prevented her from driving.  (R. 43-44).  She testified that she now naps in the afternoon due to her medication side effects and being tired after doing household chores.  (R. 40, 49).  She indicated that she does not set an alarm to wake up but still wakes up groggy.  (R. 48).  She stated that she had been offered another medication to help with her morning drowsiness but she would have had to participate in a sleep study to gain approval for the medication, which she had not done.  (R. 47).  Plaintiff reported taking muscle relaxers as needed approximately once per month, and that these drugs also make her extremely tired.  (R. 56).  She endorsed issues with focus and concentration, particularly if there are others talking in the room.  (R. 50-51).  She testified that she shuffles her feet when she walks and that she had been using her cane more over the last year.  (R. 56- 57).  She also reported falling three times.  (*Id.*).

### III.   ALJ'S DECISION

Following the administrative hearing, the ALJ issued a decision in which she made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.   The claimant has not engaged in substantial gainful activity since January 11, 2019, the alleged onset date.

3.   The claimant has the following severe impairments: psoriasis with psoriatic arthritis, multiple sclerosis, degenerative disc disease, nonalcoholic steatohepatitis, and fibromyalgia.

4.   The claimant does not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except no climbing ladders, ropes, or scaffolds, no balancing on narrow, slippery, or erratically moving surfaces, and no crawling.  The claimant could occasionally perform all other postural maneuvers.  Can have no exposure to extreme temperatures and must avoid concentrated exposure to humidity, vibration, pulmonary irritants like fumes, odors, dusts or gases.  Can have no exposure to hazards such as unprotected heights or dangerous machinery.

6.     The claimant is capable of performing past relevant work as a Manager, Internal Security.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.     The claimant has not been under a disability, as defined in the Social Security Act, from January 11, 2019, through the date of this decision.

(R. 14-25).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 25).


## IV.   LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If she is not, then the

> Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.      DISCUSSION

In her request for review, Plaintiff raises three claims:

> 1. The ALJ's listing analysis was insufficient as she failed to provide her pertinent findings regarding the paragraph B criteria for Plaintiff's multiple sclerosis.

> 2. The ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate Plaintiff's fatigue.

> 3. Claimant's disability determination was governed by an agency structure that violates the President's constitutional power to appoint and remove executive officers.

(Pl.'s Br., ECF No. 11, at 1).

### A.      Step Three Listing Analysis (Multiple Sclerosis)

In her request for review, Plaintiff argues that the ALJ erred at step three of the sequential evaluation process when she failed to provide her pertinent findings for the paragraph B criteria of Plaintiff's multiple sclerosis.  Specifically, Plaintiff contends that the ALJ failed to document her findings regarding each of the areas of mental functioning in Listing 11.09 and as required by the special technique set forth in 20 C.F.R. § 404.1520a.  The Acting Commissioner counters that the ALJ adequately addressed the components of the listing.  She further responds that Plaintiff ignores the fact that the cited regulation first requires the ALJ to determine whether Plaintiff has a medically determinable mental impairment before assessing the degree of limitation pursuant to the areas of mental functioning set forth in the regulation, but here the ALJ found that Plaintiff had no such impairment.  I agree with the Commissioner.

At step three, the ALJ analyzes whether a claimant's impairments or combination of impairments meet or medically equal one of the listings that prevent an adult, regardless of age, education or work experience, from performing any gainful activity.  20 C.F.R. § 404.1527(a).  This inquiry serves to identify those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background, making further inquiry

unnecessary. *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990). The claimant bears the burden of establishing that her impairments meet or medically equal a listing. 20 C.F.R. § 404.1525; *Sullivan*, 493 U.S. at 531. To meet this burden, the claimant must establish all the requirements of the relevant listing. *Sullivan*, 493 U.S. at 530 (claimant who meets only some of the listing requirements, "no matter how severely, does not qualify"). Meeting a listing cannot be based on diagnoses alone. 20 C.F.R. § 404.1527(d). The listings are strictly construed against claimants because meeting a listing results in an automatic finding of disability. *See Sullivan*, 493 U.S. at 530-32.

Listing 11.09, *Multiple sclerosis*, provides:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
> > 1. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> > 2. Interacting with others (see 11.00G3b(ii)); or
> > 3. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> > 4. Adapting or managing oneself (see 11.00G3b(iv)).

Listing 11.09, 20 C.F.R. pt. 404, subpt. P, app.1 § 11.09.

The ALJ considered whether Plaintiff's impairments met these criteria as follows:

> The claimant does not meet Listing 11.09 – multiple sclerosis, because she does not exhibit disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. The claimant reported poor balance and occasional use of a cane, until a recent acute ankle sprain. There is no indication that the claimant required a cane to ambulate, much less a walker or wheelchair regularly over the period under review. Nor does the claimant exhibit a marked limitation in physical functioning combined with marked limitation in one of the four mental functioning areas. The claimant's mental status examination screens by her neurologist exhibited normal mood and affect, full orientation, and intact memory and

concentration (Exhibit 11F, 13F).

(R. 16).

Citing medical records noting Plaintiff's abnormal gait and balance problems, as well as Dr. Sweeney's opinion that Plaintiff required accommodations such as limited walking, Plaintiff contends that the ALJ's analysis was insufficient because she failed to adequately set forth the reasons for her decision.  (Pl.'s Br., ECF No. 11, at 6 (citations omitted)).  However, the ALJ specifically addressed Plaintiff's "poor balance" and limited use of a cane but found them insufficient to establish the "marked limitations" required by Listing 11.09.  (R. 16 (citing R. 681-765, 812-833)).  Later in the decision, she addressed Dr. Sweeney's opinion, finding that it was only "somewhat persuasive" because it was authored well prior to the alleged onset date and, in any event, set forth "vague" restrictions not quantified in the opinion or supported by thorough treatment records.  (R. 24, 281-284).  The ALJ also accounted for Plaintiff's problems with walking and balance by ultimately limiting her to sedentary work with some postural limitations.  (R. 17).  As for the mental components of Listing 11.09, the ALJ observed that Plaintiff's mental screenings repeatedly showed her to have "normal mood and affect, full orientation, and intact memory and concentration."  (R. 17 (citations omitted); *see also* R. 606, 621, 625, 631, 668, 822, 829, 845).

Relying upon *Burnett v. Commissioner of Social Security*, 220 F.3d 112 (3d Cir. 2000), Plaintiff complains that an ALJ must set forth the reasons for her decision.  (Pl.'s Br., ECF No. 14, at 6).  However, "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  As is evident from the Court's discussion in the prior paragraph, the decision permits such a review.

In a related argument, Plaintiff posits that the ALJ's one-sentence reference to her mental functioning at the end of her Listing 11.09 analysis is lacking because she did not consider the degree of functional limitation as required by 20 C.F.R. § 404.1520a(c), but, as the Acting Commissioner notes, the ALJ was not required to do so. *See* 20 C.F.R. § 404.1520a(c)(3) (requiring the ALJ to rate the degree of limitation in the same four functional areas listed in paragraph B of Listing 11.09). Subsection (b)(1) to that regulation provides: "Under the special technique, we must *first* evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1) (emphasis added). It continues: "*If* we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section." *Id.* (emphasis added); *see also Maddaloni v. Comm'r of Soc. Sec.*, 340 F. App'x 800, 802 (3d Cir. 2009) (discussing these steps in the special technique). Here, the ALJ determined that Plaintiff did not have a "mental health medically diagnosed mental impairment."[4] (R. 15). Thus, pursuant to the steps in the special technique, there was no reason to continue to the documentation of findings regarding evidence of the impairment. *See* 20 C.F.R. § 404.1520a(b)(1); *see also Sleap v. Kijakazi*, No. 20-14002, 2022 WL 475874, at *8 (D.N.J. Feb. 16, 2022) (concluding that "the ALJ had no duty to determine whether Plaintiff's mental impairments met or were equivalent in severity to listings" where it had already been determined that they were non-severe).

For the foregoing reasons, the Court declines to remand this matter on the basis of

---

[4] The Acting Commissioner observes, and Plaintiff does not dispute, that the ALJ's reference to Plaintiff's *having* a diagnosed mental impairment is a typographical error and that surrounding discussion makes clear that the Acting Commissioner in fact intended to state that she does *not* suffer from such an impairment. (*See* R. 15).

Plaintiff's step three challenge.

### B.    RFC Determination – Fatigue

RFC is "the most a [Plaintiff] can still do despite [her] limitations."  20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1).  To determine the RFC, the ALJ must base the assessment on "all

of the relevant medical and other evidence."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3);

*Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).  That evidence includes medical records,

observations made during formal medical examinations, descriptions of limitations by the

claimant and others, and observations of the claimant's limitations by others.  *Id*.  The ALJ's

finding of residual functional capacity must "be accompanied by a clear and satisfactory

explication of the basis on which it rests."  *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

Here, the ALJ determined that Plaintiff has the RFC to perform sedentary work.  (R. 17).

In making that determination, she addressed Plaintiff's fatigue in relevant part as follows:

> Overall, while the claimant has documented sedating medication
> over the period under review, these medications are largely for
> nighttime use, the claimant has continued to drive, and her
> presentation during daytime treatment visits has routinely been
> documented as alert and [f]ully oriented (Exhibit 11F, 13F, 15F). I
> do not find evidence to support any additional absences or breaks
> due to fatigue.

(R. 22).

Plaintiff asserts that none of the three reasons provided by the ALJ necessitate a finding

that her fatigue did not cause limitations.  The Acting Commissioner refutes this assertion, and

the parties have briefed their respective positions as to each of the proffered reasons.  Upon

consideration of the parties' arguments, I agree with the Acting Commissioner that substantial

evidence exists to support the ALJ's determination that Plaintiff's fatigue did not cause

limitations beyond the restriction to sedentary work.

First, Plaintiff posits that her use of sedating medications at night is unrelated to whether

her daytime fatigue would cause limitations because she also had impairments known to cause fatigue, such as psoriasis, fibromyalgia and multiple sclerosis.  However, as the Acting Commissioner observes, Plaintiff claimed in her Adult Function Report that her *medications*, not her underlying impairments, were the source of her fatigue, which occurred primarily in the evening, nighttime, and early morning.  *See* R. 239 ("My *medications* cause fatigue *at night* & trying to *get up in the morning* . . . . [The medication] causes extreme drowsiness w/dose *in the evening time*.").[5]  Moreover, to the extent that Plaintiff also suffered from daytime fatigue, the ALJ appropriately considered her failure to undertake a sleep study recommended by her cardiologist and seconded by her neurologist: "In May 2019, her cardiologist stated fatigue was likely in part due to obstructive sleep apnea and agreed with a recommended sleep study by [her] neurologist (Exhibit 5Fp.8). The claimant has not followed up with this recommendation." (R. 21).  The ALJ was justified in discounting Plaintiff's subjective complaints of fatigue due to her failure to proceed with the recommended treatment.  *See* SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017) ("if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); *Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 375 (3d Cir. 2009) ("an ALJ may consider a claimant less credible if the individual fails to follow the prescribed treatment plan without good reason").

Second, Plaintiff argues that her ability to drive was insufficient for the ALJ to find that she did not require more work breaks due to her fatigue because Plaintiff testified at the hearing that she drove only infrequently and normally required family members to accompany her when doing so.  Nonetheless, it was not error for the ALJ to consider Plaintiff's driving, along with the

---

[5]  Plaintiff further reported that coffee "sometimes . . . but not always" was effective in relieving her morning fatigue.  (R. 239).

other reasons cited, as part of her evaluation of Plaintiff's subjective complaints of fatigue.  *See Allen-Young v. Berryhill*, No. 17-1248-SRF, 2019 WL 1220307, at *11 (D. Del. Mar. 15, 2019) (ALJ appropriately considered plaintiff's "physical examination, activities of daily living [including driving], and treatment in coming to her conclusion that [the plaintiff] failed to evince disabling fatigue"); *Aupke v. Berryhill*, No. 2:17-1471, 2019 WL 144257, at *3 (W.D. Pa. Jan. 9, 2019) (ALJ did not err in concluding that "cumulative evidence of limited treatment, medical efficacy, and activities of daily living [including driving] diminished Plaintiff's claims of debilitating fatigue"); *Weaver v. Astrue*, No. 4:11-CV-00724, 2012 WL 2194642, at *7 (M.D. Pa. June 14, 2012) (discounting plaintiff's "subjective complaints of pain and fatigue" where he engaged in activities including driving).

Third, relying on *Thomas v. Colvin*, No. 13-5791, 2015 WL 500161 (E.D. Pa. Feb. 4, 2015) and its discussion of *Claussen v. Chater*, 950 F. Supp. 1287, 1297 (D.N.J. 1996), Plaintiff submits that her presentation to medical providers as alert and fully oriented during visits is irrelevant because she was repeatedly noted to have fatigue and had been diagnosed with medical conditions known to cause that symptom.  Quoting *Thomas*, she states that "when the claimant has supplied 'evidence of chronic fatigue, supported by medical evidence of a condition which could be expected to cause it[,] the question . . . is whether [the] fatigue was debilitating.  If it was, the fact that . . . physical examinations were normal is irrelevant.'"  (Pl.'s Br., ECF No. 11, at 9-10 (quoting *Thomas*, 2015 WL 500161, at *4)).  However, as the *Thomas* court noted, the ALJ in that case seemed to have inappropriately "require[d] physical atrophy in order to credit Thomas's claims of inactivity" due to fatigue resulting from her multiple sclerosis.  *Thomas*, 2015 WL 500161, at *5.  Because Plaintiff's physical examinations were normal and did not show the atrophy expected by the ALJ, he found Thomas's fatigue not disabling.  *Id.* at *3.  On the contrary, the ALJ in this case did not rely upon the absence of demonstrated muscle atrophy

or even other physical markers, but instead considered that Plaintiff repeatedly presented to her healthcare providers as mentally alert and fully oriented, which the ALJ found to be inconsistent with her claims of disabling fatigue.  (R. 21; *see* R. 700, 707, 711, 715, 719, 725, 822, 829, 857, 870).  Accordingly, *Thomas* is distinguishable.

> *Claussen* is also distinguishable.  In that case, the court remanded a case in which the ALJ had rejected the plaintiff's subjective reports of fatigue, noting that where complaints of fatigue are "reasonably supported by the medical evidence," they "can not be rejected without contrary medical evidence."  950 F. Supp. at 1297.  The opinion identified no such evidence. Indeed, the court noted that the ALJ partially based his decision upon a "misunderstanding" of Claussen's testimony regarding the length of time that she could sit, rendering the determination that she could perform sedentary work "questionable."  *Id.*  The court also found that the ALJ apparently overlooked medical evidence that Claussen's fatigue worsened during the period under review.  *Id.*  Here, there is no indication that the ALJ misconstrued or overlooked evidence of Plaintiff's fatigue.  Rather, the ALJ considered that Plaintiff "consistently reported fatigue" but discounted these reports in part because, unlike in *Claussen*, there was "contrary medical evidence" in the form of medical records indicating that she repeatedly presented for treatment alert and fully oriented.  (R. 21 (citing Exs. 11F, 13F, 15F)).

> In addition to the three reasons provided by the ALJ for discounting Plaintiff's complaints of fatigue, Plaintiff also takes issue with the ALJ's discussion of Dr. Sweeney's medical opinion.  The ALJ explained regarding the opinion:

>> I note that Dr. Sweeney has some restrictions that are vague, like frequent breaks or limited walking (Exhibit 14E). These were not quantified in the medical source opinion, nor were thorough treatment records provided for this period due to distance from the alleged onset date in January 2019. I find this opinion to be somewhat persuasive, despite its earlier assessment date, concerning the claimant's functioning during that period, and as to the issue of how she performed her past work. The treatment visits

contained within the record generally are supportive of restrictions for fatigue and muscle weakness (Exhibit 7F, 11F, 13F). Without indication of what Dr. Sweeney intended by "limited" walking, or the frequency and duration of breaks, I do not find this portion of the opinion provides much probative value. Despite physical examination findings of full muscle strength or minimal reduced muscle strength (Exhibit 11F), the claimant's fibromyalgia tender points, decreased lower extremity sensation, psoriatic plaques support a sedentary functional capacity of reduced lifting and walking. As to the restrictions of 32 hours a week, as stated below, the claimant continued to work at substantial gainful activity, despite reduced hours, and I find that this statement is consistent with a finding that the claimant could perform her past work as actually performed.

(R. 24).

According to Plaintiff, it is "bewildering" that the ALJ could find that her treatment visits "generally are supportive of restrictions for fatigue and muscle weakness" after giving reasons earlier in the decision why limitations beyond those set forth in the RFC were unnecessary. (Pl.'s Br., ECF No. 11, at 10).  But there was nothing inconsistent with the ALJ's determination that Plaintiff required some work restrictions, such as "a sedentary functional capacity of reduced lifting and walking," but not further restrictions like additional work breaks.  (R. 24).  As noted in her discussion of Dr. Sweeney's opinion, the ALJ found the former restrictions merited by Plaintiff's fibromyalgia tender points, decreased lower extremity sensation and psoriatic plaques.  (*Id.*).  However, she did not find the opinion particularly probative regarding Plaintiff's purported need for longer or more frequent breaks because these breaks were not quantified by Dr. Sweeney, nor was the need for them reflected in the medical record where there was a 19-month gap between the opinion and the alleged onset of disability.  (*Id.*).  The ALJ was permitted to find this opinion only "somewhat persuasive," supportive of some restrictions (like sedentary work) but not additional ones (like more extensive work breaks).  *See* 28 U.S.C. § 404.1520c(c)(2) (the persuasiveness of a medical opinion should correlate with its consistency with other evidence in the record).

For the foregoing reasons, the Court declines to remand this matter on the basis of Plaintiff's arguments that the RFC determination does not properly account for her fatigue.

### C.   Separation of Powers Argument

Relying upon the Supreme Court's ruling in *Seila Law LLC v. CFPB*, Plaintiff submits that the structure of the Social Security Administration (SSA) is an unconstitutional violation of the separation of powers because its head serves for a longer term than the President (six years) but can only be removed by the President for cause ("neglect of duty or malfeasance in office"). (Pl.'s Br., ECF No. 11, at 11-12, 16-17 (citing __ U.S. __, 140 S. Ct. 2183 (2020); 42 U.S.C. § 902(a)(3))).  She contends that *Seila Law* permits removal-for-cause provisions in two contexts, neither of which exists here: (1) multimember bodies of experts, balanced by political party, that do not exercise executive power, or (2) inferior officers.  (*Id.* at 12-16).  She argues that this unconstitutional taint extends to any inferior officers (such as ALJs) appointed by or rules and regulations promulgated by the Commissioner.  (*Id.* at 16-18).  Citing cases involving violations of the Appointments Clause, she maintains that "the authenticity of an ALJ's authority matters" and that "the only appropriate remedy" for such a violation is "a new hearing before a properly appointed official."  (*Id.* at 16, 19 (citing *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018)) (internal quotations and additional citations omitted)).  Plaintiff posits that the fact that her case was decided by an ALJ appointed by a Commissioner unconstitutionally insulated from removal by the President makes her claim traceable to that constitutional defect and that "[t]he actual impact of the insulation in a given case is irrelevant."  (*Id.* at 16, 18).  She concludes by reminding the Court of its power to strike down unconstitutional statutes and by requesting that it order a new hearing with a new constitutionally appointed ALJ.  (*Id.* at 18-19).

In response, the Acting Commissioner agrees that Section 902(a)(3) violates the separation of powers but insists that that fact alone does not warrant setting aside a denial of

disability benefits.  (Resp., ECF No. 14, at 5).  Citing the Supreme Court case of *Collins v. Yellen*, she asserts that Plaintiff cannot show the required nexus between the provision and the denial of her claim for two reasons.  (*Id.* at 5-6 (citing 141 S. Ct. 1761 (2021))).  First, she maintains that "the deciding ALJ served under a ratification of her appointment by an Acting Commissioner not subject to Tenure Protection, thus severing any nexus between the removal restriction and Plaintiff's alleged harm."  (*Id.* at 7-9).  Second, she submits that Plaintiff is unable to show that Section 902(a)(3) caused the denial of her benefits claim as required by *Collins*.  (*Id.* at 9-12).  On this point, she observes that unlike instances in which an agency official lacks proper authority to occupy an office due to a violation of the Appointments Clause, "agency action is not *per se* invalid simply because it can be traced back to an official subject to an unconstitutional *removal* protection."  (*Id.* at 10 (citing *Lucia*, 138 S. Ct. 2044 (emphasis in original))).  Instead, she argues that under *Collins* there can be no argument that the official exercised power he or she did not lawfully possess as long as the official was properly appointed.  (*Id.*).  Thus, in the Acting Commissioner's view, Plaintiff can succeed on her removal challenge only if the injuries were caused by an official subject to the removal restrictions *and* the restrictions themselves "inflict[ed] compensable harm" upon Plaintiff.  (*Id.* (quoting *Collins*, 141 S. Ct. at 1789)).  This showing, the Acting Commissioner insists, Plaintiff has not made.[6]  (*Id.* at 13-17).

  In *Seila Law*, the United States Supreme Court found that a violation of the constitutional separation of powers occurs when an executive agency is led by a single head who serves for a

---

  [6] As a separate argument, the Acting Commissioner posits that Plaintiff's request for a new administrative hearing should be denied under the harmless error doctrine, the de facto officer doctrine, the rule of necessity and "broad prudential considerations."  Because this Court agrees with the Acting Commissioner that Plaintiff's separation of powers argument fails due to Plaintiff's inability to show that the offending removal provision caused the denial of her claim, this Court does not address the Acting Commissioner's remaining arguments.

longer term than the president and can only be removed from that position for cause.  140 S. Ct. 2183.  The Acting Commissioner agrees that the relevant provision of the Social Security Act, 42 § U.S.C. § 902(a)(3), violates the separation of powers to the extent that it limits the President's authority to remove the Commissioner without cause. (Resp., ECF No. 14, at 5).  However, the Acting Commissioner argues that this alone does not support setting aside Plaintiff's unfavorable disability determination because Plaintiff cannot show that the restriction actually caused her harm.  (*Id.*).

In 2021, the Supreme Court clarified its holding in *Seila* in *Collins v. Yellen*, 141 S. Ct. 1761.  In *Collins*, the Court held that an unconstitutional removal provision does not automatically render all actions taken by individuals subject to that provision void.  *Id.* at 1787. The court explained:

> Although the statute unconstitutionally limited the President's authority to remove the [individual], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [agency] as void.

*Id.* (emphasis in original).  However, the court also found that "it is still possible for an unconstitutional provision to inflict compensable harm."  *Id.* at 1789.  In such a case, the plaintiff must show that the removal restriction was the cause of the harm he suffered.  *Id.*  In the context of Social Security appeals, "*Collins* requires [the plaintiff] to demonstrate a nexus between the decision denying [his] disability benefits and 42 U.S.C. § 902(a)(3)."  *Andino v. Kijakazi*, No. 21-2852, 2022 WL 1135010, at *7 (E.D. Pa. 2022).

Notably, post-Collins, all of the courts in this Circuit that have considered such separation of powers arguments as the one raised here by Plaintiff have agreed, citing *Collins*, that they do not warrant remand.  *See, e.g., Andino*, 2022 WL 1135010; *Adams v. Kijakazi*, No. 20-3591, 2022 WL 767806, at *9-11 (E.D. Pa. Apr. 18, 2022); *High v. Kijakazi*, No. 20-3528,

2022 WL 394750, at *6 (E.D. Pa. Feb. 9, 2022); *Wicker v. Kijakazi*, No. 20-4771, 2022 WL 267896, at *8-10 (E.D. Pa. Jan. 28, 2022); *Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510 (D.N.J. Jan. 7, 2022); *Crossley v. Kijakazi*, No. 20-2298, 2021 WL 6197783, at *8 (M.D. Pa. Dec. 31, 2021).  Courts in other circuits have also reached the same conclusion.  *See, e.g. Shannon R. v. Comm'r of Soc. Sec.*, 572 F. Supp. 3d 1028, 1037-39 (W.D. Wash. 2021); *Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Webb v. Kijakazi*, No. 1:20CV714, 2021 WL 5206498, at *15 at n. 12 (M.D.N.C. Nov. 9, 2021) (Report and Recommendation); *Lisa Y. v. Comm'r of Soc. Sec.*, 570 F. Supp. 3d 993 (W.D. Wash. 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *2-3 (W.D.N.C. Oct. 27, 2021); *Tracey Ann. P. v. Kijakazi*, No. 20CV1163-LAB(RBB), 2021 WL 4993021, at *18 (S.D. Cal. Oct. 27, 2021) (Report and Recommendation); *Robles v. Comm'r of Soc. Sec.*, No. 220CV01069JDPSS, 2021 WL 4285170, at *4 n. 6 (E.D. Cal. Sept. 21, 2021); *Angelita O. v. Kijakazi*, No. 1:20-CV-00034-AJB, 2021 WL 4146085, at *18 at n. 13 (N.D. Ga. Sept. 13, 2021).

Here, Plaintiff has not shown a nexus between the decision denying her disability benefits and Section 902(a)(3).  Citing cases involving violations of the Appointments Clause, she argues the ALJ lacked authority to preside over her case and that she is entitled to a new hearing with a constitutionally appointed ALJ.  (Pl.'s Br., ECF No. 11, at 16, 19).  However, as explained in *Collins*, an unconstitutional restriction upon the President's authority to *remove* an agency officer does not create a constitutional defect in the officer's *appointment* such that his or her actions are rendered void, unlike with a violation of the Appointments Clause.  141 S. Ct. at 1787; *cf. Lucia*, 138 S. Ct. at 2055 ("the appropriate remedy for an adjudication tainted with an appointments violation is a new hearing before a properly appointed official") (citing *Ryder v. United States*, 515 U.S. 177, 183, 188, 115 S. Ct. 2031, 132 L.Ed.2d 136 (1995)) (quotations

omitted).

       Plaintiff further argues that the adjudication of her claim by an ALJ delegated authority by a constitutionally defective Commissioner establishes the necessary causal connection between her harm and the constitutional impairment.  (Pl.'s Br., ECF No. 11, at 16, 18).  Nonetheless, the mere delegation of authority by the Commissioner does not constitute a sufficient nexus to satisfy the requirements of *Collins* or *Seila Law*.  In *Collins*, the injury suffered by the plaintiffs was directly traceable to an amendment adopted by the directors of the Federal Housing Finance Agency (FHFA) that materially changed the nature of certain financial agreements. 141 S. Ct. at 1774, 1779.  As a result, the plaintiffs in *Collins* had "an identifiable basis to contend that but for the unconstitutional removal provision, the President may have removed and appointed a different Director who would have disapproved of the adoption (or implementation) of the [amendment.]"  *Lisa Y.*, 2021 WL 5177363, at *7.  But it is not enough for Plaintiff to trace her injury to the Commissioner's ability to delegate power to ALJs and to promulgate applicable rules and regulations; rather, she must be able to trace that injury to the actual unlawful conduct in this matter, which is the unconstitutional removal clause.  *See Wicker*, 2022 WL 267896, at *10 (citing *Collins*, 141 S. Ct. at 1779).  Unlike the FHFA Director in *Collins*, the Commissioner did not promulgate a new action affecting or injuring Plaintiff, and there is nothing to indicate that but for the unconstitutional removal clause the President would have removed the Commissioner and appointed a new Commissioner who would have decided Plaintiff's disability claim *differently*. See *id.* (finding Commissioner's delegation of authority to ALJs and Appeals Council did not constitute sufficient nexus to demonstrate standing under *Collins*).  As a result, Plaintiff has failed to show that the unconstitutional removal clause caused her harm.

       Accordingly, remand on this basis is denied.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**.  An

appropriate Order follows.


BY THE COURT:

  /s/ Lynne A. Sitarski            
LYNNE A. SITARSKI
United States Magistrate Judge